MAGGIE E. SCHROEDTER, ESQ. (Bar No. 270377)
maggie@thersfirm.com
LANE HILTON, ESQ. (Bar No.314892)
lane@thersfirm.com
ROBBERSON SCHROEDTER LLP
501 West Broadway, Suite 1250
San Diego, CA 92101
(619) 353-5691

Attorneys for Creditors
ZACHARY R. SMITH,
JAMES R. MCCORMICK,
KYLE E. LAKIN, AND
CHRISTINA BAINE DEJARDIN

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>DAVID MICHAEL PETERS,<br><br>Debtor and Debtor-in-Possession | CASE NO. 23-00105-MM11<br><br>Chapter 11<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER CONFIRMING TERMINATION OF STAY, OR FOR RELIEF FROM STAY**<br><br>**[ACTION IN NON-BANKRUPTCY FORUM]**<br><br>RS No. :   MES – 1<br>DATE:      March 23, 2023<br>TIME:       2:00 p.m.<br>JUDGE:    Hon. Margaret M. Mann<br>DEPT.:      1<br>ROOM:     218 |
| Zachary R. Smith, James R. McCormick, Kyle E. Lakin, and Christina Baine DeJardin<br>            Moving Party. | |
| David Michael Peters, Debtor and Barbara R. Gross, Subchapter V Trustee<br><br>            Respondents. | |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................5

II.    FACTUAL BACKGROUND.....................................................................6

    A.     General Background Of The Partnership........................................6

    B.     On February 23, 2021, Debtor Filed An Improper Chapter 7
        Bankruptcy Petition On Behalf Of The Partnership .............................7

    C.     On January 10, 2022, The Morning Of The Arbitration Hearing,
        Debtor Filed An Individual Chapter 11, Subchapter V Case ...............8

    D.     The Arbitration Award On Account Of Debtors' Fraud, Breach of
        Fiduciary Duty, And Embezzlement ......................................................8

    E.     Debtor Commenced This Bankruptcy Case The Morning Of The
        Hearing To Confirm The Award............................................................9

III.   ARGUMENT ..........................................................................................11

    A.     The Automatic Stay Terminated On February 20, 2023 .................11

        1.     *The BAP's Finding Of The Internal Inconsistency Within The
            Statute And Elimination Of Its Practical Effect Resulting From
            The "Majority View* ................................................................12

        2.     The *BAP's Finding That The Phrase "With Respect To The
            Debtor" Distinguishes Between People, Not Property.* ...........14

        3.     *The Bap's Finding That A Termination Of The Stay As To The
            Estate Property Is Support By The Legislative History* ............14

    B.     "Cause" Exists To Grant Relief From Stay .........................................15

IV.    CONCLUSION .........................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*In re ACI Sunbow, LLC*,
   206 B.R. 213 (Bankr.S.D.Cal. 1997) ................................................................. 16

4

*In re Am. Spectrum Realty, Inc.*,
5
   2015 Bankr. LEXIS 3843 (Bankr. C.D. Cal. 2015) ........................................... 16

6

*In re Arnold*,
   806 F. 2d 937 (9th Cir. 1986) ............................................................................ 16

7

*In re Avila*,
8
   311 B.R. 81 (Bankr. N.D. Cal. 2004) ................................................................ 16

9

*In re Castlerock Properties*,
   781 F.2d 159 (9th Cir. 1986) ....................................................................... 15, 16

10

*In re Cutler*,
11
   165 B.R. 275 (Bankr. D. Ariz. 1995) ................................................................ 10

12

*In re Jackola*,
   No. 11-01278, 2011 WL 2518930 (Bankr. D. Haw. June 22, 2011) .................... 15

13

*In re MacDonald*,
14
   755 F.2d 715 (9th Cir. 1985) ............................................................................ 15

15

*In re Marshall*,
   721 F.3d 1032 (9th Cir. 2013) .......................................................................... 16

16

*In re Plumberex Specialty Products, Inc.*,
17
   311 B.R. 551 (Bankr. C.D. Cal. 2004) ............................................................. 16

18

*In re Reswick*,
   446 B.R. 362 (9th Cir. BAP 2011.) .............................................................. 12, 15

19

*In re Sherman*,
20
   491 F. 3d 948 (9th Cir. 2007) ........................................................................... 16

21

*In re Smith*,
   481 B.R. 633 (Bankr. D. Nev. 2012) ................................................................. 15

22

*In re Sonnax Industries, Inc. v. Tri-Component Products Corp.*,
23
   907 F.2d 1280 (2nd Cir. 1990) ......................................................................... 15

24

*In re Whitescorn*,
   No. 13-60159-fra13, 2013 WL 1121393 (Bankr. D. Ore. Mar. 14, 2013) .......... 15

25

*In re Wilson*,
26
   No. 15-01642-FPC7, 2016 WL 3751620 (Bankr. E.D. Wa. July 7, 2016) .......... 15

27

*Mac Donald v. Mac Donald (In re Mac Donald)*,
   755 F.2d 715 (9th Cir.1985) ............................................................................. 16

28

*Matter of Little Creek Develop. Co.*
  779 F.2d 1068 (5th Cir. 1986)......................................................................16

*Matter of Newman,*
  875 F.2d 668 (8th Cir. 1989).........................................................................11

*Vitalich v. Bank of New York Mellon,*
  569 B.R. 502 (N.D. Cal. 2016) .....................................................................15

**Cases**

*Smith v. Peters,*
  SDSC Case No.: 37-2018-00054719 ..............................................................6

**Federal Statutes**

11 U.S.C. § 305(a) ...........................................................................................9

11 U.S.C. § 362(c)(3) .....................................................................................14

11 U.S.C. § 362(c)(3)(A) ..................................................................................5

11 U.S.C. § 362(c)(3)(A), or (2) .......................................................................5

11 U.S.C. § 362(c)(3)(B) .................................................................................13

11 U.S.C. § 362(d)(1) .......................................................................................5

11 U.S.C. § 362(g)(2) ......................................................................................16

11 U.S.C. § 501...............................................................................................17

11 U.S.C. § 523 or § 727 ................................................................................17

11 U.S.C. § 362(d)(1) .....................................................................................15

Movants and Creditors Zachary R. Smith, James R. McCormick, Kyle E. Lakin, and Christina Baine DeJardin (collectively, "Creditors") hereby submit this Memorandum in Support of their Motion for (1) an Order Confirming Termination of Stay Under 11 U.S.C. § 362(c)(3)(A), or (2) for Relief From Stay as to an Action in a Non-bankruptcy Forum Under 11 U.S.C. § 362(d)(1) ("Motion").

**I.    INTRODUCTION**

Creditors are partners with Debtor in the now dissolved law partnership, Partners & Freedman, LLP, and have participated in arbitration with Debtor regarding the dissolution since October 2018. On January 10, 2022, the morning of the arbitration hearing, Debtor filed an individual Chapter 11, Subchapter V petition in this bankruptcy court (the "First Bankruptcy"). On March 3, 2022, the Honorable Laura Taylor, judge presiding, dismissed the case.

After the arbitration hearing, the Honorable Judge William McCurine, Ret. issued an arbitration award in favor of Creditors in the amount of $15,339,614.41 (the "Award"), finding that Debtor violated his fiduciary duties to Creditors, embezzled money from the partnership, and committed fraud against Creditors. Creditors filed a Petition in the Superior Court to confirm the Award. On January 19, 2023, the Court issued a tentative ruling in advance of the January 20 hearing granting Creditors' Petition to Confirm the Award in the amount of $15,339,614.41.

On the morning of the hearing on January 20, 2023, Debtor commenced this Subchapter V case by filing a certificate of counseling – inaccurately identifying it on the docket as a petition. Three days later, on January 23, Debtor filed a barebones Chapter 11 petition. The First Bankruptcy was pending within the preceding 1-year period of the petition date.

11 U.S.C. § 362(c)(3)(A) provides that "if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the *debtor was pending within the preceding 1-year period but was dismissed,* other than a case refiled under a chapter other than chapter 7 after

dismissal under section 707(b) – "**(A)** the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case . . ." 11 U.S.C. § 362(c)(3)(A). The automatic stay therefore terminated on February 20, 2023 under 11 U.S.C. § 362(c)(3)(A).

Alternatively, Creditors seek relief from the automatic stay to proceed with the nonbankruptcy action to judgment. Creditors' claims arise under nonbankruptcy law and are most expeditiously resolved in the nonbankruptcy forum. "Cause" therefore exists to grant Creditors relief from stay.

## II.    FACTUAL BACKGROUND

### A.    General Background Of The Partnership

The Partnership is a limited liability partnership that consists of five partners, Debtors and Creditors. Creditors own 54% of the Partnership. The Partnership primarily represented homeowners' associations concerning day-to-day operations, collection of assessments, and in construction defect lawsuits. [Declaration of Zachary Smith ("Smith Dec."), ⌐ 3.]

Creditors asserted claims against Debtor in connection with the Partnership, which primarily dealt with Debtor's large-scale embezzlement and gambling of Partnership assets and his destruction of the firm though his management style based on instilling fear, bullying, constant lying, and general abuse of Partnership personnel (partners, associates and staff), often appearing to be intoxicated, that was destroying firm morale and resulting in a mass exodus of staff. In light of those claims, Creditors resolved to dissolve the Partnership, and sought an injunction to preserve and protect the Partnership's assets (*Smith v. Peters*, SDSC Case No.: 37-2018-00054719) ("Dissolution Action"). [Smith Dec., ¶ 4.] On November 1, 2018, the Hon. Jacqueline Stern, Ret. entered an injunction preserving and protecting the Partnership's assets.  [Smith Dec., ⌐ 5.]

On December 7, 2018, the parties stipulated to arbitration before the

Honorable William McCurine, Ret. Since then, Judge McCurine has served as the parties' Arbitrator and Referee and has issued over a dozen orders in connection with the winding up of the Partnership. [Smith Dec., ⁋ 6.]

### B.    On February 23, 2021, Debtor Filed An Improper Chapter 7 Bankruptcy Petition On Behalf Of The Partnership

The Arbitration Hearing was initially set to commence before Judge McCurine on March 8, 2021. On February 23, 2021, the day a Motion for Terminating Sanctions against Debtor was set to be heard before Judge McCurine arising out of Debtor's intentional destruction of critical evidence, one day before Debtor's deposition was set to take place, and just a few weeks before the Arbitration Hearing was set to commence, Debtor caused a bankruptcy Petition to be filed with the United States Bankruptcy Court for the Southern District of California on behalf of the Partnership, Case No. 21-00646-LA7 ("Partnership Bankruptcy"). [Smith Dec., ¶ 7.]

On March 5, 2021, Creditors filed a Motion to Dismiss the Partnership Bankruptcy *inter alia* on the grounds that (i) Peters did not have authority to file the Partnership Bankruptcy because the orders of the Superior Court and Judge McCurine divested and deprived Peters of any authority to file a bankruptcy petition on behalf of the Partnership, and (ii) alternatively, the Court should abstain and dismiss the Partnership Bankruptcy case pursuant to 11 U.S.C. § 305(a), in favor of the comprehensive Dissolution Action. [Smith Dec., ¶ 8, Ex. A; Request for Judicial Notice ("RJN"), Ex. A.]

On March 26, 2021, the Bankruptcy court, the Honorable Louise D. Adler presiding, entered an order granting Creditors' Motion to Dismiss and further retained jurisdiction to hear Creditors' sanctions motion. [Smith Dec., ¶ 9, Exs. B-C; RJN, Exs. B-C.]

**C.    On January 10, 2022, The Morning Of The Arbitration Hearing, Debtor Filed An Individual Chapter 11, Subchapter V Case**

Following the dismissal of the Partnership Bankruptcy, and after Judicate West and the San Diego Superior Court rejected Peters' efforts to remove Judge McCurine from the case on the alleged grounds of bias, Judge McCurine again set the Arbitration hearing to commence on January 10, 2022. [Smith Dec., ¶ 10.]

Creditors and their counsel appeared before Judge McCurine on January 10, 2022. That morning at 10:10 a.m., 40 minutes after the Arbitration Hearing was scheduled to commence, Peters filed an individual Chapter 11, Subchapter V Petition for Bankruptcy, Case No. 22-00036-LT11 ("Individual Bankruptcy"). [Smith Dec., ¶ 11, Ex. D; RJN, Ex. D.]

While Creditors' Motion for Relief from Stay was pending, and without having filed his Schedules or otherwise disclosed his assets, liabilities, and financial condition, Peters requested dismissal of the Petition. [Smith Dec., ¶ 12, Ex. E; RJN, Ex. E.]  The Court dismissed the case on March 3, 2022 and entered an 180-day bar on Debtor being a debtor under Title 11. [Smith Dec., ¶ 13, Ex. F; RJN, Ex. F.]

**D.    The Arbitration Award On Account Of Debtors' Fraud, Breach of Fiduciary Duty, And Embezzlement**

The Arbitration hearing took place on April 5, 6, 7, 20, and 21, 2022. [Smith Dec., ¶ 14.] Through a series of rulings on June 27, 2022, September 13, 2022, September 20, 2022, and October 6, 2022 (collectively, the "Award"), the Arbitrator awarded Creditors $9,857,608.76 in compensatory damages, $2,000,000 in punitive damages, $1,367,101.13 in prevailing party attorney's fees and costs, post arbitration attorney's fees and costs, and prejudgment interest for a total of **$15,339,614.41.** [Smith Dec., ¶ 15, Exhibit G; RJN, Ex. G.]

///

///

///

### E.   Debtor Commenced This Bankruptcy Case The Morning Of The Hearing To Confirm The Award

The hearing on Creditors' Petition to Confirm the Award was set for January 20, 2023 at 1:30 p.m. [Smith Dec., ¶ 16.] On January 19, 2023, the Court in the Dissolution Action issued a tentative ruling granting Creditors' Petition to Confirm in the amount of $15,339,614.41. [Smith Dec., ¶ 17.] At the hearing, Debtor advised the Court that he filed a bankruptcy petition, and the court took the matter off calendar as a result. But Debtor did not actually file a bankruptcy petition; rather, he filed a Certificate of Counseling at 12:49 pm, just minutes before the 1:30 pm hearing. Debtor did not file an actual petition until January 23.

On February 3, Debtor filed statements and schedules. [Doc. No. 30.] Debtor did not schedule real property he owns located at 42456 Golden Oak, Big Bear Lake, CA 92315, valued at approximately $887,300, and at 1471 Via Valente, Escondido, CA 92029, valued at approximately $1,159,800.[1] [Declaration of Maggie E. Schroedter ("Schroedter Dec."), ¶¶ 3-8, Exs. H-L.] It also appears that Debtor grossly undervalued the real property he did schedule. For example, he values his 7,400 square foot residence on four acres in Rancho Santa Fe at $3 million despite it having a current $5.6 million Zillow value. [Schroedter Dec., ¶¶ 9-13, Exs. M-Q.] His other real properties are similarly undervalued in his Schedules by at least approximately **$8,474,187.00.** (Schroedter Dec., ¶ 13, Ex. R.)

In Debtor's pending divorce proceeding, Debtor filed a Declaration regarding his real property interests, stating: ". . . only one has an $80,000 mortgage. The rest are free and clear and represent very significant positive income." [Schroedter Dec., ¶ 14, Ex. S; RJN, Ex. S.] However, in Schedule D, Debtor claims that the following properties are encumbered as follows:

1.  903 Via Mil Cumbres Unit 136; value of encumbrance: $85,000

---

[1] Debtor's wife claims that the Via Valente property is her separate property, however Debtor has argued that it is community property. [Smith Dec., ¶ 19.]

2.  308 Flores de Oro Rancho Santa Fe; value of encumbrances: $499,000.00

Further, the "significant positive income" is scheduled in the SOFA as just ***$1.00 per year*** from "rents" for years 2020 to the present. [Doc. No. 30-8, SOFA.]

Also, in the Divorce Action, his wife disclosed nine deposit/investment accounts holding community property assets. The total assets held in these accounts are unknown. However, in Debtor's wife's Declaration filed in that action, she identified transactions and attempted transactions that add up to approximately $3,952,982-$4,467,982.  [Smith Dec., ¶ 16, Ex. T; RJN, Ex. T.] By order dated May 11, 2022, the Court in the Divorce Action froze those accounts. [Schroedter Dec., ¶ 16, Ex. U; RJN, Ex. U.] Creditors are also aware, through Partnership records, of two additional deposit accounts held by Peters. In addition, Creditors are also aware that Peters deposited $1,000,000 on September 11, 2014 with Liberty for an annuity and $2,000,000 on February 12, 2015 with Structured Assignments, Inc. in connection with a Fee Structured Plus ("FSP") plan.[2] [Smith Dec., ¶ 20.]

But Debtor only scheduled one personal checking account valued at $200. [Doc. No. 30-1, p. 9.] He did not schedule any of the deposit/ investment accounts listed in the attachment to the writ of attachment and further did not disclose the $2 million FSP he set up for himself in 2015. [Doc. No. 30-1, p. 9-10.] Debtor identified $0 in business income in Schedule I, and did not disclose the "very significant positive income" that he is generating from the leases of his real property as he described in his Divorce Action. [Doc. No. 30-6.]

He claims a 35% ownership interest in his office condominiums despite the deed for those condominiums indicating he has a 50% interest and his partner in those condominiums recently indicating the same. He also identifies the Partnership's cash assets as his own, which they are not.[3] He did not schedule an

---

[2] https://www.structuredassignments.bb/
[3] A debtor's partnership interest is included in the bankruptcy estate, but the partnership's actual assets are not. *In re Cutler*, 165 B.R. 275, 280 (Bankr. D. Ariz.

amount of Creditors' claims, even though he is aware of the Arbitration Award. [Doc. No. 30-11.]

## III.     ARGUMENT

### A.     The Automatic Stay Terminated On February 20, 2023

Section 362(c)(3)(A) provides:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this section—
>
>    (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--
>
>    (A) **the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case**;

Further, section 362(j) provides:

> (j) On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

The First Bankruptcy was filed on January 10, 2022, and was dismissed on March 3, 2022. It was pending within one year of this Bankruptcy initiated on January 20, 2023. Accordingly, the automatic stay terminated on the 30th day after the petition date, January 20, 2023.

Creditors acknowledge that there is a split of authority on the issue without a decision from the Ninth Circuit. The "majority view" is that § 362(c)(3)(A) terminates the automatic stay only with respect to the debtor and debtor's property,

---

1995); *Matter of Newman*, 875 F.2d 668, 671 (8th Cir. 1989) (Trustee's only interest in debtor's partnership property was right to demand partner's share after accounting and payment of partnership liabilities).

but *not* with respect to property of the estate. The "minority view" is that § 362(c)(3)(A) terminates the automatic stay *in its entirety,* that is, with respect to the debtor, the debtor's property, and property of the estate. *In re Reswick,* 446 B.R. 362, 365-66 (9th Cir. BAP 2011.)

In *Reswick,* the Ninth Circuit BAP adopted the minority view. In a well-reasoned opinion, the BAP held that: (1) interpreting section 362(c)(3)(A) as terminating the stay only with respect to the debtor and the debtor's property renders this section internally inconsistent and eliminates its practice effect; (2) the better reading of the phrase "with respect to the debtor" interprets section 362(c)(3)(A) as distinguishing between people (the debtor and a joint-filing spouse), not property; and (3) the legislative history supports an interpretation that the stay terminates in its entirely for a repeat filer. *Id.,* at 373.

### 1. The BAP's Finding Of The Internal Inconsistency Within The Statute And Elimination Of Its Practical Effect Resulting From The "Majority View"

Reviewing the provision as a whole, the BAP found that the opening clause "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease" was surplusage to the phrase "respect to the debtor" under the "majority view," holding:

> If the phrase "with respect to the debtor" meant that the automatic stay only terminated as to the debtor personally and as to non-estate property, the opening clause of section 362(c)(3)(A) would be surplusage. There would be no reason for section 362(c)(3)(A) to reference actions "with respect to a debtor or property securing debt or with respect to any lease" if the interpretation of . . . the majority were correct.

In other words, the provision could merely read: "the stay under subsection (a) . . . shall terminate with respect to the debtor . . ." However, it does not, thereby giving meaning to the opening phrase not considered by the "majority view" (i.e., "the stay . . . . with respect to **any action** taken with respect to a debt" has meaning

to include action against the estate property subject to the debt).

The BAP further reasoned that the "majority view" eliminates section 362(c)(3)(A)'s practice effect:

> Very few creditors would seek to pursue only the debtor personally, or only property of the debtor. Indeed, this interpretation would provide no meaningful relief to creditors . . . As a result, a [creditor] would have any efforts to collect a judgment thwarted by a repeat filing.

The BAP found the "majority view" difficult to reconcile with section 362(c)(3)(B), which provides the mechanism to extend the automatic stay in the case of a repeat filer. The BAP stated (bold added):

> Section 362(c)(3)(B) permits a party in interest, upon notice and a hearing, to seek a continuation of the automatic stay beyond the 30-day period if the movant can demonstrate that the case was filed "in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). This provision specifically allows a "party in interest," not just the debtor, to seek an extension of the automatic stay. . . **Property of the estate would have to be subject to the stay termination for any party other than the debtor to have sufficient reason to file the motion**. "It seems illogical that Congress would enact a provision which both requires moving parties to meet a high burden of proof and which requires the courts to hear these matters on an expedited basis, only to have both the process and the end result meaningless and of no utility if property of the estate remains protected by the automatic stay, notwithstanding a termination of the automatic stay under § 362(c)(3)(A)." *Id.*, internal citations omitted.

The BAP further held that the "majority view's" "plain language" interpretation undermines itself in that it apparently necessarily inserts language into the statute, holding:

> . . . in assessing the statutory construction of the majority interpretation, we note that it does not simply find that the stay terminates with respect to the debtor personally, even though a "plain language" interpretation of "with respect to the debtor" might dictate such a result. . . Instead, the majority

interpretation finds that the stay terminates "with respect to the debtor and the debtor's non-estate property," which somewhat undermines the persuasiveness of their "plain language" argument.

### 2. The BAP's Finding That The Phrase "With Respect To The Debtor" Distinguishes Between People, Not Property.

The BAP held the phrase "with respect to the debtor" is a distinction between people, not property as the "majority view" finds.  In this regard, the BAP stated:

> The beginning of section 362(c)(3) states: "if a single or joint case is filed by or against debtor . . ." 11 U.S.C. § 362(c)(3). Keeping this introduction in mind, "with respect to the debtor" in section 362(c)(3)(A) is best interpreted as meaning that the stay terminates as to a repeat-filing debtor, but not as to the debtor's spouse who is not a repeat filer. . . Because section 362(c)(3)'s opening phrase recognizes that some repeat filing cases are filed by single debtors while others are filed by joint debtors, the phrase "with respect to the debtor" logically refers to whom  (i.e. the serial filing spouse) termination of the automatic stay applies under section 362(c)(3)(A), not to which property the termination applies — particularly given that section 362(c)(3)(A) specifically references "the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease."

### 3. The BAP's Finding That A Termination Of The Stay As To Estate Property Is Supported By The Legislative History.

The  BAP  acknowledges  that  courts  have  found  section  362(c)(3)(A) confusing and susceptible to multiple interpretations.  However, the BAP thought that the "majority view" does not look to the legislative history of the statue despite this ambiguity. According to the BAP, the "legislative history demonstrates that Congress  intended  to  deter  successive  bankruptcy  filings  by  imposing  stricter limitations on the power of the automatic stay as subsequent cases are filed. . . . For this provision to have its intended effect, it must be interpreted as terminating the automatic stay in its entirety. . . Any interpretation of section 362(c)(3)(A) other

than one terminating the stay in its entirety "would be contrary to the clear legislative history, would do little to discourage bad faith, successive filings, and would create, rather than close, a loophole in the bankruptcy system by allowing these debtors to receive the principal benefit of the automatic stay — protection of property of the estate."

Many bankruptcy courts within the Ninth Circuit have followed *Reswick* in determining that § 362(c)(3)(A) terminates the automatic stay in its entirety. *See, e.g., In re Wilson*, No. 15-01642-FPC7, 2016 WL 3751620, at *3 n.6 (Bankr. E.D. Wa. July 7, 2016); *In re Whitescorn*, No. 13–60159–fra13, 2013 WL 1121393, at *2 (Bankr. D. Ore. Mar. 14, 2013); *In re Smith*, 481 B.R. 633, 636 n.4 (Bankr. D. Nev. 2012); *In re Jackola*, No. 11-01278, 2011 WL 2518930, at *3 (Bankr. D. Haw. June 22, 2011); *Vitalich v. Bank of New York Mellon*, 569 B.R. 502, 510 (N.D. Cal. 2016) (having considered the language of the statute itself, the statutory structure, the legislative intent, the cases articulating both the majority and minority views, and in particular the Ninth Circuit BAP's lengthy and well-reasoned opinion discussing all of the above, this Court concludes that § 362(c)(3)(A) terminates the automatic stay entirely and not only with respect to the debtor and the debtor's property.)

Consistent with the *Resnick* holding, Creditors request an order confirming that the automatic stay is terminated *in its entirety,* that is, with respect to the Debtor, the Debtor's property, and property of the estate.

### B.    "Cause" Exists To Grant Relief From Stay

11 U.S.C. section 362(d)(1) authorizes relief from stay for "cause." Whether "cause" exists warranting relief from stay is determined on a case-by-case basis. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986), quoting *In re MacDonald,* 755 F.2d 715, 717 (9th Cir. 1985). The bankruptcy court must balance the interest of the parties. *In re Sonnax Industries, Inc. v. Tri-Component Products Corp*., 907 F.2d 1280, 1286 (2nd Cir. 1990).

The party seeking relief from the automatic stay must first establish a prima facie case that "cause" exists; once that showing has been made, the burden shifts to the debtor to demonstrate that relief from the stay is unwarranted. *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004*); In re Am. Spectrum Realty, Inc.*, 2015 Bankr. LEXIS 3843 at \*14 (Bankr. C.D. Cal. 2015). The Bankruptcy Court has discretion in determining whether cause exists to modify the stay. *Mac Donald v. Mac Donald (In re Mac Donald),* 755 F.2d 715 (9th Cir.1985). "Exercising discretion in determining cause for stay relief requires the balancing of hardships and consideration of the totality of the circumstances." *In re Avila*, 311 B.R. 81, 83–84 (Bankr. N.D. Cal. 2004).

The Ninth Circuit has held that pending state court litigation constitutes "cause" to grant relief from stay to allow the case to be adjudicated to judgment by the court overseeing the litigation. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986). Further, the debtor's bad faith (or lack of good faith) in filing the bankruptcy case is cause for granting relief from the stay.[4] *In re Arnold*, 806 F. 2d 937, 939 (9th Cir. 1986); *Matter of Little Creek Develop. Co.* 779 F.2d 1068, 1072 (5th Cir. 1986). A debtor's improper use of bankruptcy "as a refuge from the jurisdiction of another court" may constitute "cause" for relief from the automatic stay. *See In re Sherman*, 491 F. 3d 948, 970-972 (9th Cir. 2007).

Here, the nonbankruptcy action will be resolved *far* more efficiently in the superior court. The claims arise under nonbankruptcy law. Creditors' arbitration with

---

[4] It is well established in this Circuit that the "debtor bears the burden of proving that the petition was filed in good faith." *In re Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013); *In re ACI Sunbow, LLC,* 206 B.R. 213, 217 (Bankr.S.D.Cal. 1997) ("the debtor had the burden of proving the petition was filed in good faith" for purposes of § 362(d)(1)); *see*, 11 U.S.C. § 362(g)(2); *see also*, 11 USC § 362(c)(3)(C) (Providing that second bankruptcy pending within a year presumptively filed not in good faith (which presumption may be rebutted by clear and convincing evidence to the contrary) for purposes of a motion to continue automatic stay after 30 days).

Debtor has been pending since 2018. Judge McCurine has already conducted a trial, heard witnesses, reviewed evidence, and made detailed findings of fact and issued an Award. There is nothing left to be done in state court other than to confirm the Award and enter judgment.

Further, the case was commenced in bad faith. Debtor commenced this bankruptcy on the morning of the hearing to confirm the Arbitration Award. He did so in bad faith to prevent entry of judgment, to forum shop.[5] These factors constitute "cause" to grant relief from stay, to allow the superior court to confirm the Award and enter judgment in favor of Creditors.

To the extent the Court finds that the stay did not automatically terminate and is not in effect, Creditors respectfully request that this Court grant relief from stay to allow creditors to proceed to final judgment in the nonbankruptcy forum. Creditors agree that the stay will remain in effect as to the enforcement of any resulting judgment against the Debtor or his estate, except that Creditors will retain the right to file proofs of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

///

///

///

---

[5] Debtors scheduled the Claims as disputed, contingent, and unliquidated, despite the Award.

## IV.    CONCLUSION

For the foregoing reasons, Creditors respectfully request that the Bankruptcy Court enter an order confirming that the automatic stay terminated as of February 21, 2023, or in the alternative, granting Creditors' relief from stay to proceed in the nonbankruptcy forum to judgment.

DATED:  February 23, 2023                    ROBBERSON SCHROEDTER LLP

By: */s/Maggie E. Schroedter*
    MAGGIE E. SCHROEDTER, ESQ.
    LANE HILTON, ESQ.
    Attorneys for Creditors
    ZACHARY R. SMITH,
    JAMES R. MCCORMICK,
    KYLE E. LAKIN, AND
    CHRISTINA BAINE DEJARDIN