TENTATIVE RULING

ISSUED BY JUDGE MARGARET M. MANN

Debtor: DAVID MICHAEL PETERS ("Peters")

Number: 23-00105-MM11

Hearing: 2:00 PM Thursday, March 23, 2023

Motions:

1.  MOTION FOR RELIEF FROM STAY, RS # MES-1 FILED BY ZACHARY R. SMITH, JAMES R. MCCORMICK, KYLE E. LAKIN, CHRISTINA BAINE DEJARDIN ("Creditors")

2.  MOTION FOR RELIEF FROM STAY, RS # MDB-1 FILED BY REFEREE, HON. WILLIAM MCCURINE JR. (RET)

3.  MOTION TO DISMISS OR CONVERT TO CHAPTER 7 FILED BY CREDITORS (advanced fr. 3/30/23)

Germane to all three motions is the background of the state case and Peters's previous bankruptcy filings. The court will accordingly begin with a summary.

Creditors and Peters were partners in the Partnership. Creditors filed *Smith, et al. v. Peters*, San Diego Superior Court Case No. 37-2018-00054719 ("State Case") alleging claims against Peters based on his embezzlement and gambling of Partnership assets and destruction of the firm through abusive behavior. The State Court entered an injunction preserving and protecting the Partnership's assets on November 1, 2018. Doc. 54-2, p. 2. Creditors and Peters then stipulated to the appointment of the Honorable William McCurine, Ret. as arbitrator and referee on December 7, 2018. Doc. 54-2, p. 2.

Many events occurred in the arbitration. Creditors filed a motion for terminating sanctions against Peters for destroying critical evidence that was set for hearing on February 23, 2021. Creditors scheduled Peters's deposition set to occur on February 24, 2021. The arbitration hearing was set for March 8, 2021. Before all three events could occur, Peters filed the Partnership Bankruptcy case on February 23, 2021, assigned to the Honorable Louise DeCarl Adler, Case No. 21-00646-LA7 ("Partnership Bankruptcy").

Creditors sought dismissal of the Partnership Bankruptcy by filing a motion on March 5, 2021. The court granted that motion on March 26, 2021, finding Peters lacked authority to file the case, the filing "thwarted and delayed dissolution of [the Partnership]", and there was no valid purpose for the case. Creditors then sought sanctions against Peters. The court issued a written decision awarding sanctions against Peters on August 12, 2021. In awarding sanctions totaling $137,116.61 pursuant to Fed. R. Bank. P. 9011, the Court found the filing was "frivolous and filed for an improper purpose." The Court also found the filing was clearly intended to disrupt other legal proceedings, and Peters engaged in an "egregious abuse of the bankruptcy system." The Court also noted Peters was declared a vexatious litigant twice in state court. The order awarding sanctions was entered on September 21, 2021.

After the Partnership Bankruptcy was dismissed and Peters unsuccessfully tried to remove Judge McCurine as arbitrator, the arbitration hearing was set for January 10, 2022. Shortly after the arbitration was set to start, Peters filed his own Subchapter V case, Case No. 22-00036-LT11, ("1st Case") on January 10, 2022 at 10:10 a.m. The statements and schedules were not complete, and no amended statements or schedules were filed. Case No. 22-00036-LT11, Doc. 1. Creditors sought relief from the automatic stay. Peters then sought dismissal of the 1st Case, which was granted. Case No. 22-00036-LT11, Docs. 48, 50, 57. The Court denied Creditors' request for a two-year refiling bar but issued a 180-day refiling bar and deemed Creditors' motion for relief from the automatic stay moot because of the dismissal. Case No. 22-00036-LT11, Docs. 48, 50. The 1st Case was dismissed on March 3, 2022.

The arbitration hearing occurred on April 5-7, 20, and 21, 2022. Judge McCurine issued several rulings on June 27, 2022, September 13, 2022, September 20, 2022, and October 6, 2022 resulting in an award to Creditors of $9,857,608.76 in compensatory damages, $2,000,000 in punitive damages, $1,367,101.13 in attorneys' fees and costs and pre-judgment interest for a total of $15,339,614.41 ("Award").

Creditors pursued collections actions through a writ of attachment, levies and as a result claim status as a secured creditors in the amount of $10,657,608.76. Creditors then filed a petition to confirm the Award in State Court that was set for hearing on January 20, 2023 at 1:30 p.m. The State Court issued a tentative ruling on January 19, 2023 granting this petition and confirming the Award of $15,339.614.41.

Peters filed this bankruptcy case at 12:49 p.m. on January 20, 2023 ("2nd Case"), less than one hour before the hearing on the petition to confirm the Award. Peters told the State Court he had filed the 2nd Case and the State Court took the hearing off calendar.

1. **MOTION FOR RELIEF FROM STAY, RS # MES-1 FILED BY Creditors**

Creditors request an order confirming termination of the automatic stay or, alternatively, an order granting relief from the automatic stay ("Stay Motion"). Creditors contend the automatic stay terminated on February 20, 2023[1], which is 30 days after Peters filed this bankruptcy pursuant to 11 U.S.C. § 362(c)(3)(A) and an order confirming the termination of the automatic stay is mandatory under § 362(j). Creditors primarily rely on *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 366 (B.A.P. 9th Cir. 2011) where the Ninth Circuit Bankruptcy Appellate Panel adopted the minority interpretation of "with regard to the debtor" in § 362(c)(3)(A) to mean the stay terminates 30 days after the petition date as to the debtor, debtor's property, and bankruptcy estate property. Peters filed this case less than one year after he filed his last case and never sought an extension of the automatic stay resulting in the termination of the automatic stay.[2]

Peters opposes stay relief[3]. Although most of his opposition focuses on his disputes with the wind up of Peters and Freedman LLP ("Partnership"), he contends (1) this case does not violate the 180 day bar to refiling imposed in his first bankruptcy case and Creditors are violating an agreement regarding that bar by pursuing the Motion, (2) the court should adopt the majority in view in finding § 362(c)(3)(A) only lifts the stay as to debtors and their property, (3) equity favors Peters, and (4) the court should deny the request for relief from the stay for the same reasons the confirmation of termination of the stay should be denied. The court rejects Peters's claim that Creditors are prevented from pursuing relief from stay because it is a violation of the 180-day refiling bar based on the language of the order. The court also rejects Peters's equity arguments as he was responsible for accessing information, processes, and assets to allow him to complete his schedules when he filed this bankruptcy case.

Janet Peters, Peters's wife with whom divorce proceedings are pending, opposes the Motion contending Creditors should be limited to only seeking confirmation of the

---

[1] Creditors' brief inconsistently asks for a determination that the stay terminated on February 20, 2023, in two sections or February 21, 2023, in the conclusion. Thirty days from January 20, 2023, is February 19, 2023.

[2] Peters filed his first bankruptcy case on January 10, 2022, and it was dismissed, at his request, on March 3, 2022. This case was filed on January 20, 2023, less than one year after the first case was dismissed.

[3] His opposition was filed late since it was due by March 10, 2023, and it was not filed until March 11, 2023, at 1:43 am. Local Bankruptcy Rule 5005-7 ("Electronic filing must be completed before midnight in order to be considered timely filed that day."). The court will consider the untimely filing since, which is not prejudicial to Creditors since the court granted their alternative relief.

Award. The court will grant stay relief to that extent. But it will follow the majority view that § 362(c)(3)(A) only pertains to property of the Debtor and deny Creditors' request for confirmation that the stay already expired.

## I.   Peters's Evidentiary Objections

Peters filed evidentiary objections to Creditor Zachary R. Smith's ("Smiths") and attorney Maggie E. Schroedter's ("Schroedter's") declarations filed in support of Creditors' Stay Motion. These evidentiary rulings are limited to the Stay Motion and do not affect the evidence considered in the Dismissal Motion because Peters did not file evidentiary objections to that evidence.

Both objections start with an "Evidence Law Summary," but it is unclear whether these are intended to be general objections to the entirety of the declarations. Without further explanation, the court cannot rule on the Evidence Law Summary.

For Schroedter's declaration, Peters objects based on lack of foundation to statements found at Doc. 94, paragraphs 3 through 5 and 14 through 16. Peters also objects to paragraphs 14 through 16 for lack of foundation. Each of these statements pertain to true and correct copies of various documents filed with courts. Those objections are overruled because this court can take judicial notice of court filings. *See Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1057 (E.D. Cal. 2021) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (overruling objection for lack of foundation where the exhibits were subject to a request for judicial notice).

The rest of the objections to Schroedter's declaration are to statements regarding exhibits containing Zillow valuations for Peters's various properties. These objections are sustained.

For Smith's Declaration, Peters asserts relevance objections to the statements found at Doc. 56-3, paragraphs 3 through 20 to the limited extent relevant to the Stay Motion. The relevant facts are the date Peters filed the 1st Case, the date the 1st Case was dismissed, the date the 2nd case was filed, and whether a motion seeking to extend the stay was filed and granted. Because of this limited scope, Peters's relevance objections to Doc. 56-3, paragraphs 3 through 10, 12, 14, 15, 17, 19, and 20 are sustained because they do not relate to the specific facts "of consequence in determining the action." Fed. R. Evid. 401(b). Irrelevant evidence is not admissible under Fed. R. Evid. 402 making the rest of the objections to paragraphs 3 through 10, 12, 14, 15, 17, 19, and 20 moot. Peters's relevance objections to paragraphs 11, 13, 16, and 18 are overruled.

Peters's objections for lack of foundation to paragraphs 11, 13, 16, and 18 are overruled because Smith explains he is one of the plaintiffs in the State Case and has personal

knowledge of the facts stated in the declaration. The objections for "[t]estimony consists of argument rather than factual testimony" and improper opinion to paragraph 11 are overruled because the statement states the date and time of the filing of the 1st Case and the case number. No argument or opinion is present in the statement. In any event, the date Peters filed the 1st Case, the date the 1st Case was dismissed, the date the 2nd case was filed, and whether a motion seeking to extend the stay was filed and granted are judicially noticeable facts since the court can review the public dockets in the 1st and 2nd Cases to determine those facts. *See Culinary Studios*, 517 F. Supp. 3d at 1057.

## II.   **Analysis**

The circuits are split on whether, under § 362(c)(3), serial bankruptcy cases filed within a one-year period, cause the automatic stay to terminate 30 days after the petition was filed as to all property of the debtor and the estate. This minority view was adopted in *In re Smith*, 910 F.3d 576 (1st Cir. 2018). The alternative majority view is that the stay in these circumstances is terminated just as to the debtor. See *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226 (5th Cir. 2019). The Ninth Circuit has not ruled on this issue and the BAP decision of *Reswick* is not binding on this court. *In re Silverman*, 616 F.3d 1001, 1005, n.1 (9th Cir. 2010) ("We have never held that all bankruptcy courts in the circuit are bound by the BAP."). The court must thus choose between these views.

Section 362(c)(3)(A) states:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this section—

>> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--

>> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease ***shall terminate with respect to the debtor on the 30th day after the filing of the later case***;

(emphasis added). The key phrase in the majority view is that the emphasized phrase "with respect to the debtor" is plain and unambiguous so that the stay remains in effect as to property of the estate. The minority view is that the statute is ambiguous requiring resort to legislative history and intent to interpret it.

Some, but not all[4], cases in the Ninth Circuit have declined to follow *Reswick* in favor of the majority view. *Rinard v. Positive Invs., Inc. (In re Rinard)*, 451 B.R. 12, 19 (Bankr. C.D. Cal. 2011) was the first to reject *Reswick* finding the BAP ignored the plain language of § 362(c)(3)(A) and contending the BAP was wrong in stating "with respect to the debtor" was ambiguous. *In re Thu Thi Dao*, 616 B.R. 103, 110 (Bankr. E.D. Cal. 2020) (finding *Reswick* did not account for the importance of estate property in a Chapter 7 case and declining to follow *Reswick*); *In re Ramsey*, No. 21-10230-MKN, 2021 Bankr. LEXIS 418, at *18 n.30 (Bankr. D. Nev. Feb. 17, 2021) (declining to follow *Reswick* finding the holding would have an inequitable impact in the Chapter 7 context where it would prevent a trustee from examining the debtor); *Moore v. Reis (In re Moore)*, 631 B.R. 764, 781 (Bankr. W.D. Wash. 2021) (adopting the approach taken in *Rinard* finding many courts have adopted the majority view since *Reswick*). The Fifth Circuit in *Rose*, 945 F.3d at 230, and *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008) also followed *Rinard*.

This court rejects the BAP's analysis in *Reswick* most importantly because it does not respect the plain language of the statute. *Lamie v. United States Trustee*, 540 U.S. 526, 538, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (stating a plain, non-absurd meaning is enforceable even if outcome is harsh), cited in *Samson v. W. Capital Partners, LLC (In re Blixseth)*, 684 F.3d 865, 872 (9th Cir. 2012). As cogently stated in *Rinard*, 451 B.R. at 19-20.

> The plain text of §362(c)(3)(A) is crystal clear that the automatic stay is terminated with respect to the Debtor. There is no mention of the Estate in the text. There are no fuzzy words; there are no hanging paragraphs; there are no words requiring a dictionary.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985). The policy concerns addressed by § 362(c)(3)(A) in preventing repeat filers are also outweighed by the policy of equitable distribution to creditors as noted in *Rinard*, 451 B.R. at 19-20. In any event, policy arguments are the province of Congress not the courts. *Law v. Siegel*, 571 U.S. 415, 427, 134 S. Ct. 1188,

---

[4] *Smith v. Me. Bureau of Revenue Servs. (In re Smith)*, 910 F.3d 576, 591 (1st Cir. 2018) (adopting minority view); *Vitalich v. Bank of N.Y. Mellon*, 569 B.R. 502, 510 (N.D. Cal. 2016) (affirming bankruptcy court's order confirming the automatic stay terminated pursuant to 362(c)(3)(A) after considering the "language of the statute itself, the statutory structure, the legislative intent, and in particular the Ninth Circuit BAP's lengthy and well-reasoned opinion…"); *In re Hernandez*, No. 2:11-bk-53730-NB, 2012 Bankr. LEXIS 1914, at *16 (Bankr. C.D. Cal. Jan. 31, 2012) (following *Reswick*).

1198 (2014) ("it is not for courts to alter the balance struck by the statute"). Nor is Congress's apparent choice in favor of punishing debtors but not the estate for filing serial cases absurd. Creditors benefit from a bankruptcy process guided distribution of debtors' assets if the automatic stay is preserved as to property of the estate.

### III. <u>Conclusion</u>

The automatic stay did not terminate as to property of the estate. That said, the court will grant stay relief to the extent of allowing Creditors to confirm the Award which is largely unopposed. Peters's bad faith in filing this case as a means of forum shopping warrants this limited relief from the automatic stay. *State of Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay."). The court will not grant stay relief, however, to the extent of allowing Creditors to perfect or enforce their attachment lien without further relief from this court which protects the rights of Janet Peters ("Janet"),[5] , a creditor and Peters's wife with whom divorce proceedings are pending, in the community assets if any.

### 2. <u>MOTION TO DISMISS OR CONVERT TO CHAPTER 7 FILED BY CREDITORS</u>

Creditors also seek dismissal of Peters's Subchapter V bankruptcy case with a two-year bar to refiling bankruptcy in any United States bankruptcy court ("Motion"). Alternatively, Creditors request conversion to Chapter 7, removal of Peters as the debtor-in-possession, or an instruction to the Subchapter V Trustee to "investigate [Peters's] acts, conduct, and financial condition with a written report to the Court." Creditors contend: (1) Peters filed this case to avoid confirmation of the Award, (2) Peters cannot propose a feasible plan, (3) Peters failed to disclose assets and undervalued those assets he did disclose, and (4) Peters has abused the bankruptcy system.

Subchapter V Trustee Barbara Gross ("Trustee") agrees dismissal is appropriate referring to the case as essentially a two-party dispute and all other creditors are sophisticated enough to collect outside of bankruptcy. Janet supports conversion or removal of Peters as debtor-in-possession. Janet contends the statements and schedules are incomplete, omit assets, and are inaccurate.

Peters untimely filed his opposition on March 14, 2023, at 1:03 a.m. despite the deadline of March 13, 2023. Local Bankruptcy Rule 5005-7 ("Electronic filing must be completed before midnight in order to be considered timely filed that day."). The opposition references exhibits, none of which are attached or filed separately. Peters's declaration mostly cites to law making it more of a brief than a declaration, which is

---

[5] The court uses Janet's first name for ease of reference and does not intend any disrespect.

impermissible since parties are limited to 25 pages for memoranda and briefs pursuant to Local Bankruptcy Rule 9013-7(d)(1). Despite these procedural issues, the court considered his opposition and finds he does not address the allegations of inaccurate and incomplete schedules and statements or the allegations of bad faith. Instead, Peters argues about the wind up of Peters and Freedman LLP ("Partnership"), which does not address the issues raised in the Motion.

## IV.    Background of the 2nd Case

The first document Peters filed in this case was a Certificate of Counseling. Doc. 1. Two days later, Peters filed a Chapter 11 Voluntary Petition attempting to correct the initial filing document. Doc. 3. This document also has issues. Page 2 is not page 2 of the petition and instead is page 4 from Schedule E/F. The petition continues on pages 3 through 6, but page 7 is again the Certificate of Counseling followed by the rest of petition in pages 8 and 9. Peters filed this same error ridden document on January 24, 2023. Doc. 11.

The court issued a Notice of Failure to Comply with Filing Requirements stating Peters failed to file the Statement of Social Security Number, a list of names and addresses for those scheduled on Schedules D-H, and the creditor matrix and he was required to do so by January 24, 2023 at 4:30 p.m. or the case would be dismissed. Doc. 5-2. The court issued another notice stating Peters failed to file all schedules, the Statement of Financial Affairs, the Summary of Assets and Liability and Statistical Information, the Chapter 11 Statement of Current Monthly Income, and Declaration RE: Electronic Filing of Petition, Schedules and Statements and stated those documents were due within 14 days of the filing of the petition filing or the case would be dismissed. Peters did not comply with the first notice, but the case was not dismissed.

Peters filed the list of the 20 largest unsecured creditors on January 26, 2023. The List includes Urban Coast Properties with a rental expense claim of $53,500; each of the Creditors with claims for the partnership dispute of $2-3 million; Janet M. Peters with a claim for divorce, indemnification valued at $2 million to $12 million; Judicate West with an arbitration fees claim of $29,916.25; Michael Quade with a professional fees claim of $88,630.66; Morningside Community Assn with an "owners association" claim of $50,000 to $200,000; New York Marine & Gen Ins Co with an insurance defense claim of $10,000; and a professional fees claim of $11,771.38 owed to an undisclosed claimant. Doc. 18. This differs from the list of 20 largest unsecured creditors filed in the 1st Case, which also included Brian Worthington with a claim for attorneys' fees of $12,500 and the Kaseno CPA Firm, APC with a claim for professional fees of $27,000.

Peters filed a Chapter 11 Statement of Your Monthly Income[6] on February 3, 2023, stating he receives pension or retirement income of $19,500 and his net monthly income from rental or other real property was unknown. Doc. 29.

The balance of schedules filed on February 3, 2023, contain several indications they are incomplete, i.e. the response to question 22 on Schedule A states, "LIST ALL SECURITY DEPOSITS FROM TENANTS" and Schedule C mostly contains question marks[7]. The balance of schedules includes two sets of schedules. The first Schedule A/B primarily consists of Peters's real property assets totaling $11,597,985.14. The second Schedule A/B primarily consists of accounts and personal property totaling +$12,631,000.00. Creditors contend Peters has omitted and undervalued many of his assets. Attached as Exhibit A is a list of the assets schedule in both Schedules A/B and Creditors contentions regarding those assets.

Schedule E/F lists Janet, each of the Creditors, Smart Corner Owners Association, and Morningside Community Assn as claimants with unknown claim amounts. Peters listed Preovolos Lewin ALC as the holder of an $11,771.38 claim for professional fees, Quade & Associates with a claim for professional fees of $88,630.66, and Judicate West with a claim for arbitration fees of $47,916.25. Schedule E/F also includes New York Marine & General Insurance Co. with a $100,000 claim based on insurance defense. Notably, Urban Coast Properties, the Kaseno CPA Firm, APC, Brian Worthington, the Internal Revenue Service, and the California Franchise Tax Board are not on Schedule E/F.

In Schedule I, Peters states he is employed with the Oracle Lawyers, but does not receive an income other than $19,500 from annuities. Schedule I lists a $500,000 expense for additional mortgage payments for his residence and other monthly expense totaling $1,900. Peter claims his monthly net income is $0. This is inaccurate since Peters lists his monthly income from Schedule I as $6,000, despite stating he receives $19,500 in Schedule I, and lists no expenses, despite listing expenses in Schedule J.

Peters in the Statement of Financial Affairs states his income from January 1, 2023 to the petition date was $0 for operating a business and $0 for 2020 and 2021. He reported receiving rents of $1 in 2020, 2021, and January 1, 2023 to the petition date.

For the disclosure of payments to insiders in the Statement of Financial Affairs, Peters states he made payments to insiders but failed to disclose those payments. The same

---

[6] The docket entry states the document filed was the balance of schedules, but that is incorrect.

[7] The court is aware of the recently filed schedules and statement, but the amendments do not change the fact that Peters only corrected schedules statement in the face of the Motion and he has failed to fully correct the schedules and statements. For example, amended Schedule A/B does not list 1471 Via Valente, Escondido, CA 92029 and the Statement of Financial Affairs is only the last page with Peters's signature leaving the transfers undisclosed, and Schedule J still lists Peters's monthly net income as $0.

issue exists for his failure to disclose transfers of property within the two years before the bankruptcy filing in response to Question 18. Indeed, Janet contends he made several pre-petition transfers that are not disclosed. The alleged transfers are included in Exhibit A.

Peters, in his divorce proceedings, disclosed that he only owes an $80,000 mortgage and the rest of the properties are owned free and clear and generate income. Despite this representation, Peters scheduled several encumbrances on real property: (1) $85,000 lien on 903 Via Mil Cumbres Unit 136; (2) $499,00 on 308 Flores de Oro Rancho Santa Fe. This also indicates he did not properly disclose his income reported on his Statement of Financial Affairs, which states he earned $1 from rents for 2020 to the present.

### V.   Peters's Appeal in the Partnership Bankruptcy Case Does Not Immediately Impact This Case

Without explaining its effects on this Motion or the case, Peters mentions his appeal pending before the Ninth Circuit of an order in the Partnership Bankruptcy. The court confirmed the appeal does not affect this Motion or the court's jurisdiction. Peters appealed Judge Adler's minute order on the motion for sanctions in the Partnership Bankruptcy, doc. 95. Case No. 21-00646-CL7, Doc. 97. The appeal was sent to District Court which assigned it case number 3:21-cv-1251-DMS-LL. The District Court dismissed Peters's appeal for failure to provide an adequate record and comply with Federal Rule of Appellate Procedure 10(b)(2), but to the extent the court permitted review, it found Judge Adler did not abuse her discretion. Peters then appealed the District Court's decision to the Ninth Circuit. Ninth Circuit Case No. 22-553-85. The Ninth Circuit appeal is currently pending with Peters having filed is opening brief on February 22, 2023. The answering brief is due March 30, 2023. Peters did not appeal any of the rulings on the motion to dismiss the Partnership Bankruptcy and never sought a stay pending appeal. *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 904 (9th Cir. 2005) (the pendency of an appeal does not prevent this court from enforcing its own orders absent a stay pending appeal). In any event the court does not see the relation of that appeal to this case.

### VI.   Analysis

Section 1112(b)(1) permits a party in interest to request dismissal or conversion to Chapter 7, "whichever is in the best interests of creditors and the estate, for cause…" The court must first determine whether cause exists to warrant conversion or dismissal and then must determine whether dismissal, conversion, or the appointment of a trustee or examiner are in the best interests of creditors and the estates or if there are unusual

circumstances where dismissal or conversion is not in their best interests. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014).

## A.  Cause Exists to Convert or Dismiss the Case

Determining cause under § 1112(b) is subject to the court's broad discretion. *Sullivan*, 522 B.R. at 614 (citing *Chu v. Syntron Bioresearch, Inc. (In re Chu)*, 253 B.R. 92, 95 (S.D. Cal. 2000). Only one ground for cause is necessary. *Reagan v. Wetzel (In re Reagan)*, 403 B.R. 614, 621 (B.A.P. 8th Cir. 2009) (citing *Loop Corp. v. United States Trustee*, 290 B.R. 108, 112 (D. Minn. 2003)). Section 1112(b) contains a list of what may constitute "cause" to dismiss or convert a case to chapter 7. Cause may include a lack of good faith or abuse of the chapter 11 process. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1047 (9th Cir. 2013). Debtor's subjective intent is not factored into the determination of good faith. *Id*. Instead, courts consider an "amalgam of factors" and whether evidence exists that would indicate "an intent to abuse the judicial process" or whether it appears a debtor filed bankruptcy "to effect a speedy, efficient reorganization." *Id*.

Creditors contend there are four grounds for cause under § 1112(b): (1) Peters lacks good faith because he filed this case to avoid confirmation of the Award, (2) Peters cannot propose a feasible plan, (3) Peters failed to disclose assets and undervalued those assets he did disclose, and (4) Peters is abusing the bankruptcy system. Peters's arguments related to these issues are minimal. His bankruptcy related arguments are: (1) the schedules must pass a smell test, (2) he disputes the IRS claim; and (3) he could not obtain the information related to the IRS claim. Peters does not dispute the allegations of bad faith, his inability to propose a plan, or his abuse of the bankruptcy system.  Peters's focus on the improper winding up of the Partnership and any alleged wrongdoing by the Creditors is not relevant in determining the Motion. Peters sought bankruptcy protection but failed to uphold his duties and responsibilities in proceeding in good faith in this proceeding.

## B.  Peters's Bad Faith in Filing the 2nd Case

Peters filed this case less than one hour before the hearing on confirmation of the Award. In *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 831 (9th Cir. 1994), the Ninth Circuit determined a case was filed in bad faith where it was filed "solely to delay collection [of a judgment]" where the debtor "had an ability to satisfy the judgment with nonbusiness assets." However, in *Marshall*, 721 F.3d at 1048, the Ninth Circuit determined a bankruptcy was not filed in bad faith where the timing of the petition indicated it may have been filed to avoid paying a judgment, but debtor's liquid assets were likely insufficient to satisfy the judgment or pay a bond required by Texas law. While the debtor's "main motivation" may have been to ameliorate the burden imposed

by the judgment, the court noted debtor's plan provided for payment of the judgment. *Id.*
*Marsch* noted, however, that bankruptcy cases filed to avoid a judgment do not
"comport with the objectives of the bankruptcy laws" if the debtor can pay the judgment.
*Id.* at 828-29 (citing *In re Sparklet Devices, Inc.*, 154 Bankr. 544, 548-49 (Bankr. E.D.
Mo. 1993); *In re Harvey*, 101 B.R. 250, 252 (Bankr. D. Nev. 1989); *In re Holm*, 75
Bankr. 86, 87 (Bankr. N.D. Cal. 1987)). Although bankruptcy is frequently used to get
relief from a judgment, bad faith exists where the bankruptcy is used to "unreasonably
deter and harass creditors." *Sullivan*, 522 B.R. at 615 (citing *Marshall*, 298 B.R. at 683;
*Marsch*, 36 F.3d at 828). Both Schedules A/B, even as amended, reflect large assets
totaling over $23 million, which do not include the undisclosed and undervalued
property. Peters did not refute Creditors' assertions. With no evidence to controvert
Peters intention in filing this case and his ability to pay the Award, it is appropriate to
find Peters filed this case in bad faith.

Other factors considered by courts to determine whether a debtor lacks good faith
because he filed bankruptcy to avoid paying an appeal bond, or in this case a judgment,
include:

1. Whether the debtor is a viable business which would suffer severe
   disruption if enforcement of the judgment was not stayed; and the
   chapter 11 petition was filed to preserve its status as an ongoing
   concern and to protect its employees and creditors;
2. Whether the debtor had financial problems on the petition date, other
   than the adverse judgment
3. Whether the debtor has relatively few unsecured creditors, other than
   the holder of the adverse judgment
4. Whether the debtor has sufficient assets to post a bond to stay the
   judgment pending appeal;
5. Whether the debtor acted in good faith to exhaust all efforts to obtain a
   bond to stay the judgment pending appeal;
6. Whether the debtor intends to pursue an effective reorganization within
   a reasonable period of time, or whether the debtor is unwilling or
   unable to propose a meaningful plan until the conclusion of the
   litigation; and
7. Whether assets of the estate are being diminished by the combined
   ongoing expenses of the debtor, the chapter 11 proceedings, and
   prosecution of the appeal.

*In re Mense*, 509 B.R. 269, 280-81 (Bankr. C.D. Cal. 2014) (citations omitted). Peters is
an individual, not a business so the first factor does not apply. The second factor
support bad faith since Peters's only financial problem is the Award with relatively small
other unsecured debts. The fourth factor supports bad faith since Peters has sufficient

assets to satisfy the Award. The fifth factor is inapplicable. The sixth factor is discussed below. The last factor also supports bad faith because although Peters will incur expenses associated with filing the 2nd Case, his assets will be subject to the protections provided by the bankruptcy system to protect creditors.

Overall, these factors indicate Peters lacked good faith in filing the 2nd Case to avoid confirmation of the Award. That is sufficient cause to warrant conversion or dismissal under § 1112(b). *Mense*, 509 B.R. at 284 (analyzing the factors and finding an individual debtor was using Chapter 11 to re-litigate not reorganize and the filing was in bad faith constituting cause to dismiss the case).

### C. It is Premature to Determine Whether Peters Can Reorganize

Creditors argue Peters does not have the ability or intent to reorganize. They rely on the reported income from Schedule J and his history of no gross income in 2020 and 2021 as reported in the Statement of Financial Affairs. Creditors intend to seek a nondischargeability judgment for the Award and Peters's inability to pay the nondischargeable debt within the Plan is evidence that the Plan is not feasible.

The court declines to decide whether Peters can propose a feasible plan at such an early stage in the case and without a proposed plan having been filed. *Sullivan*, 522 B.R. at 618-19 (citing *Can-Alta Props., Ltd. v. State Sav. Mortg. Co. (In re Can-Alta Properties, Ltd.)*, 87 B.R. 89, 92-93 (9th Cir. BAP 1988) ("Although it is well within a bankruptcy court's decision-making authority to determine facial non-confirmability of a proposed plan (such as when considering a  motion for approval of a filed disclosure statement, determining the facial non-confirmability of an unfiled plan so early in the case and absent a fully developed record is not supportable.").

### D. Peters Omitted and Undervalued Assets

Creditors also argue Peters omitted and undervalued assets. Peters does not contend otherwise and instead makes a vague reference to a "smell test" in determining the propriety of schedules and does so without citing authority. A review of the schedules and Creditors' evidence reflects he omitted some, but not all, of the assets Creditors claim he omitted. Specifically, Peters omitted the following assets:

- 42456 Golden Oak, Big Bear Lake, CA 92315
- 1471 Via Valente, Escondido, CA 92029
- Liberty Annuity - $1,000,000
- Fee Structured Plus - $2,000,000
- Allsprings Funds – unknown value
- First Financial Credit Union – unknown value

Exhibit A contains a chart of the assets referenced by Creditors and whether the asset was disclosed in the bankruptcy case. Peters does not dispute Creditors' values for the properties disclosed.

Janet references several pre-petition transfers that are not disclosed in Peters's statements or schedules. Those transfers are: (1) $350,000 Wire Transfer from a Lifetime Financial Advisors account on January 14, 2022; (2) $500,000 wire transfer from a Fidelity account on January 21, 2022; (3) A Wells Fargo account holding $6,400 was closed in January 2022; and (4) $944,000 transfer out of a Fidelity account on May 6, 2022. Doc. 54-17. Peters does not dispute these transfers.

Peters's failure to file complete schedules and omitting assets is cause for converting or dismissing the 2nd Case. *In re Hoyle*, No. 10-01484-TLM, 2013 Bankr. LEXIS 420, at *49 (Bankr. D. Idaho Jan. 17, 2013) converted a case from Chapter 11 to Chapter 7 where debtor "failed to disclose assets and transactions necessary for the UST and creditors to properly evaluate the estate and Debtor's reorganization plans". *Hoyle* rejected the debtor's argument placing blame on others for his failure to disclose assets and placing the burden to raise the issue on others finding those arguments ignored a debtor in possession's burden under the Bankruptcy Code and Rules. *Id.* Upholding those burdens is a prerequisite to protection in a Chapter 11 case. *Id.*

Although the lack of disclosure claim is not supported by as many examples as Creditors allege, many omissions of assets and transfers are not disputed. Peters does not establish as "reasonable justification" for his acts or omissions pursuant to § 1112(b)(2)(B)(i).

### E.  Peters's History in Bankruptcy is an Abuse of the Bankruptcy System

Creditors argue Peters's history of bankruptcy filings and the timing of each of the filings constitutes an abuse of the bankruptcy process. Some factors for determining good faith in the instance of repetitive filings are: "(1) the time between the prior case and the present one; (2) whether the second case was filed to obtain the favorable treatment afforded by the automatic stay; (3) the effort made to comply with the prior case plan; (4) the fact that Congress intended the debtor to achieve its goals in a single case; and, (5) any other facts the court finds relevant." *In re Huerta*, 137 B.R. 356, 368 (Bankr. C.D. Cal. 1992) (discussing bad faith in successively filing two Chapter 13 cases and one Chapter 7 case).

Peters first filed the Partnership Bankruptcy on January 23, 2021, just before the hearing on Creditor's motion for terminating sanctions against Peters for destroying critical evidence, the day before his deposition, and about two weeks before the arbitration hearing.

Peters's second filing was the 1st Case filed less than one year later, on January 10, 2022. The 1st Case was filed shortly after the rescheduled arbitration hearing was set to start that same day.

Peters's third filing is the 2nd Case on January 20, 2023, less than one hour before the hearing on Creditors' petition to confirm the Award in State Court where the State Court had issued a tentative ruling in Creditors' favor.

Each of these filings frustrated proceedings in the State Case. The disposition of the Partnership Bankruptcy exhibits Peters's bad faith in that filing. The court dismissed the Partnership Bankruptcy finding it was unauthorized and frivolous and sanctioned Peters for filing it. In the 1st Case, Peters sought dismissal because he was unable to obtain the financial documents necessary to fulfill his obligations as a debtor. The court found it appropriate to impose a dismiss the 1st Case with a 180-day bar to refiling. This history of filings and the dispositions exhibit an abuse of the bankruptcy system is cause under § 1112(b)

### F. Conversion to Chapter 7 is Warranted Over Dismissal

The court has an independent obligation under § 1112 to consider whether dismissal or conversion would be in the best interest of all creditors, not just the largest and most vocal creditor." *Sullivan*, 522 B.R. at 612-13.

Creditors and Trustee support dismissal contending this is a two-party dispute and all other creditors can pursue their remedies outside of bankruptcy. Janet supports conversion contending the omissions and undervaluing in the schedules and statements warrants conversion.  Particularly since the court finds the automatic stay remains in effect as to property of the estate,[8] the court strongly believes conversion is the correct outcome. But the court concludes the stay did not terminate as to property of the estate, although it will grant stay relief in a more modified view but leave the collection, liquidation, and distribution of assets to the bankruptcy process.

The court concludes conversion is in the best interests of all creditors because it would ensure equitable distributions would be achieved, and Peters would lack authority to either abuse state court litigation which would be transferred to the Chapter 7 Trustee. Assets to pay creditors would also be augmented by the Bankruptcy Code avoiding powers as necessary and then liquidated. Many of the factors identified as germane to

---

[8] Where no automatic stay exists, there is no function for a Chapter 7 liquidation. *See In re Karoly Vendal Foldesi & Margaret Foldesi Family Land Tr. # 3, No. 02-03410*, 2003 Bankr. LEXIS 2247, at *20 (Bankr. D. Idaho Feb. 25, 2003) (finding in a single asset real estate case that the automatic stay terminated and there was no function for a Chapter 7 liquidation).

the dismissal or conversion decision are met here. See *In re Hoyle*, No. 10-01484-TLM, 2013 Bankr. LEXIS 420, at *51-53 (Bankr. D. Idaho Jan. 17, 2013) (citing *Rand v. Porshe Fin. Servs. (In re Rand)*, 2010 Bankr. LEXIS 5076, 2010 WL 6259960, *10 n.14 (9th Cir. BAP Dec. 7, 2010)).

Creditors contend they have the largest claim, and all the other creditors are related to the arbitration making this case a two-party dispute between Creditors and Peters. This is inaccurate, however. A case is not a two-party dispute where no other creditors exist. *Sullivan*, 522 B.R. at 617. Other creditors include Janet, Morningside Community Assn., Smart Corner Owners Assn. New York Marine & Gen Ins Co, the IRS[9], and the FTB.

### G. Conversion Renders Creditors' Request for Alternative Relief Unnecessary

Creditors alternatively request Peters be removed as the debtor-in-possession pursuant to 11 U.S.C. § 1185(a) contending this can be done for cause based on fraud, dishonesty, incompetence, gross mismanagement of affairs before or after the case was filed, or failure to perform obligations under a confirmed plan. Creditors other alternative request is an investigation by the Subchapter V Trustee into Peters's financial condition pursuant to 11 U.S.C. § 1183(b)(2).

Although both are reasonable requests because of Peters's bad faith and abuse of the bankruptcy system, neither are necessary.

### VII.   Peters Qualification as a Debtor in Subchapter V

Creditors briefly argue Peters does not qualify as a Subchapter V debtor because the total of the first five proofs of claims filed exceed the debt limit of $7,500,000. The United States Trustee recently filed a motion challenging Peters's designation as a Subchapter V Trustee. Doc. 96. Both the argument and motion are rendered moot by conversion.

### VIII.   Conclusion

After consideration of all the factors relevant for determining cause, and Peters having failed to argue against bad faith and abuse of the bankruptcy system, this case will be converted to a Chapter 7 case.

---

[9] Peters in his opposition unclearly discusses the undisclosed IRS liability which Peters disputes is much less than the amount from the proof of claim in his 1st Case. Peters contends he is unable to obtain information requested by during the 341(a)meeting regarding the IRS debt. Peters does not explain how this is relevant.

3. **MOTION FOR RELIEF FROM STAY, RS # MDB-1 FILED BY REFEREE, HON. WILLIAM MCCURINE JR. (RET)**

Referee Hon. William McCurine Jr. (Ret.) ("Referee" or "Judge McCurine") requests an order modifying or lifting the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow him to continue and complete the winding up of the Partnership, including his authority to issue orders as needed and petition the State Court for guidance regarding his role as Referee. Alternatively, Referee seeks and order declaring the automatic stay does not apply. Referee does not seek relief from the automatic stay regarding the Partners' claims in arbitration.

Referee first contends he is a party in interest to allow him to request relief from the automatic stay. Referee next contends either the automatic stay should be lifted or declared to not apply to Referee's actions because the Partnership's assets are not part of Peters's bankruptcy estate pursuant California Corporations Code §§ 16201 and 16501 and the stay is inapplicable.

Peters's untimely[10] opposition again primarily focuses on disputes in the State Case. Peters's arguments are nonsensical and unsupported with authority. First, he contends his tax consequences from the Partnership warrant his bankruptcy filing. Second, Peters claims his bankruptcy case is warranted because he is primarily impacted by his debts. Last, Peters questions the court's subject matter jurisdiction citing to California state law. This is plainly wrong since motions to terminate, annul, or modify the automatic stay are core proceedings meaning they are squarely within this court's subject matter jurisdiction. 28 U.S.C. § 157(b)(2)(G).

Janet also opposes stay relief largely claiming Referee has no standing to seek stay relief based on the orders appointing him. The court finds he has standing as defined by the Bankruptcy Code. *In re Veal,* 450 B.R. 897, 913 (Bankr. 9th Cir. 2011) ("Collier uses a similarly expansive statement: 'Any party affected by the stay should be entitled to seek relief.'" Referee has standing because he is concerned that not proceeding with his court appointed work would impair the assets entrusted to his care. That is a sufficient impact for him to seek the limited relief he seeks, since the court has no jurisdiction over the Partnership Assets

Additionally, based on the authorities cited, the court agrees that the automatic stay applies only to the technical extent of Peters's being named as a defendant. But since the Motion does not seek stay relief to pursue any claim against Peters, this aspect is not implicated. The court determines either that the stay is not applicable to the proceedings overseen by Referee to wind up the Partnership affairs, or alternatively that

---

[10] Peters filed the opposition at 1:06 am on February 25, 2023.

stay relief is appropriate for cause since property of the estate is not implicated, and the Partnership's property could be harmed by delay of the dissolution proceedings.

As to Referee's authority to act as a matter of the state court orders and law, the court defers to the state court to determine that issue and abstains from ruling on it.

4. **All Matters Will be Heard**

All hearings in Chapter 7 cases, Chapter 11 cases, and adversary proceedings will be conducted in person at the court.  Any party may request a Zoom appearance for good cause and must make the request by 10:00 a.m. two days before the hearing by contacting the Courtroom Deputy for Dept. 1 at (619) 557-7407. Any party appearing by Zoom must review the Chamber's Guidelines for doing so. A substantive tentative may follow.

**EXHIBIT A**
**In re David M. Peters, Case No. 23-00105-MM11**

Comparison of Schedules to Allegedly Omitted Assets and

Transfers and Undervalued Assets

| Property Description | Creditors' Contention | Schedules |
|---|---|---|
| **Real Property** | | |
| 42456 Golden Oak, Big Bear Lake, CA 92315<br><br>Doc. 54-15, Doc. 54-45, p. 12. | Unscheduled<br><br>Valued at $887,300 Doc. 54-37 | |
| 1471 Via Valente, Escondido, CA 92029<br><br>Doc. 54-15, Doc. 54-45, p. 11. | Unscheduled $1,159,800 Doc. 54-38 | |
| 930 Via Mil Cumbres, # 136, Solana Beach, CA 92075<br><br>Doc. 54-15, Doc. 54-45, p. 12. | Undervalued<br><br>Valued at $784,500, Doc. 54-40<br><br>Encumbrance of $85,000 | $400,000 value Doc. 30-1.<br><br>$85,000 claim secured by a deed of trust by Wells Fargo. Doc. 30-3. |
| 7546 Gibraltar Street # C, Carlsbad, CA 92009<br><br>Doc. 54-15, Doc. 54-45, p. 12. | Undervalued<br><br>Valued at $642,500, Doc. 54-41 | $ 300,000 value<br><br>Doc. 30-1. |
| 1352 Caminito Septimo, Cardiff by the Sea, CA 92007<br><br>Doc. 54-15, Doc. 54-45, p. 11. | Undervalued<br><br>Valued at $901,737 | $400,000 value<br><br>Doc. 30-1. |
| 7801 Centella Street # 3, Carlsbad, CA 92009 | Undervalued | $400,000 value<br><br>Doc. 30-1. |

| | | |
|---|---|---|
| Doc. 54-15, Doc. 54-45, p. 12. | Valued at $775,300, Doc. 54-42 | |
| 7527 Jerez Court #C, Carlsbad, CA 92009<br><br>**Doc. 54-15,** Doc. 54-45, p. 12. | Undervalued<br><br>Valued at $745,900, Doc. 54-43 | $380,000<br><br>Doc. 30-1. |
| 6333 Mt. Ada Road #255, San Diego, CA 92111<br><br>Doc. 54-15, Doc. 54-45, p. 12. | Undervalued<br><br>Valued at $363,800 | $200,000<br><br>Doc. 30-1. |
| 191 Calle Magdalena, Encinitas, CA 92024<br><br>Doc. 54-15 | Undervalued<br><br>Valued at $5,116,950 | $1,400,000 value Doc. 30-1. |
| 308 Flores de Oro, Rancho Santa Fe, CA 92067<br><br>**Doc. 54-15** | Undervalued<br><br>Valued at $5,623,500, Doc. 54-39<br><br>Encumbrance of $499,000 | $3 million value Doc. 30-1.<br><br>$600,000 exemption. Doc. 30-2.<br><br>$496,495.96 claim secured by a Deed of Trust/HELOC by Wells Fargo Doc. 30-3.<br><br>$499,000 claim secured by deed of trust by Wells Fargo. Doc. 30-3.<br><br>In the second Schedule D found at Doc. 30-10, Debtor only listed Wells Fargo's secured claim of $499,000. |
| 5648-54 Lauretta St., San Diego, CA 92110<br><br>Doc. 54-15, p. 6, Doc. 54-45, p. 11. | | 5648 $500,000 value Doc. 30-1.<br>5650 $500,000 value Doc. 30-1.<br>5652 $600,000 value Doc. 30-1. |

|  |  | $600,000 value Doc. 30-1. |
|---|---|---|
| **Accounts** |  |  |
| Liberty Annuity - $1,000,000<br><br>Doc. 54-15 | undisclosed |  |
| Fee Structured Plus - $2,000,000<br><br>Doc. 54-15 | undisclosed |  |
| Allsprings Funds<br><br>Doc. 54-15 | undisclosed |  |
| Two accounts with Lifetime Financial Advisors<br><br>Doc. 54-15 | undisclosed | $1,300,000 "Fidelity and Lifetiume (sic) accts *see attached schedule"[11] Doc. 30-9. |
| Five accounts at Fidelity<br><br>Doc. 54-15 | undisclosed | $1,300,000 "Fidelity and Lifetiume (sic] accts *see attached schedule"[12] Doc. 30-9.<br><br>$1,300,000 "*See Fidelity and Lido schedule"[13] |
| First Financial Credit Union<br><br>Doc. 54-15 | undisclosed |  |
| Wells Fargo Personal Checking #5120 |  | $100 Doc. 30-1[14]<br><br>Or<br><br>$17,400 Doc. 30-9 |

---

[11] No schedule was attached.
[12] No schedule was attached.
[13] This is listed against in response to question 14. It is unclear whether these are the same or different accounts. No schedule was attached.
[14] The first Schedule A/B found at Doc. 30-1 discloses one account for The Oracle Lawyers and ten accounts for Peters & Freedman LLP.

| | | |
|---|---|---|
| Wells Fargo Savings #1917 | | $300 |
| Accounts Receivable | | Two $30,000 Ars with $29,000 of each deemed doubtful or uncollectable accounts valuing at $2,000. Doc. 30-9. |
| Peters and Freedman LLP | | 54-90% ownership interest with unknown value[15] |
| Desks, chairs | | $5,000 |
| Software | | $7,000 |
| 2017 Lexus | | $17,000 |
| 2004 Mercedes | | $3,000 |
| 2017 Nissan Titan *see addendum[16] | | $30,000 |
| Any building, other improved real estate or land which the debtor owns or in which the debtor has an interest | | Debtor states "*see attached schedule" but none was attached but the value of "+$10,000,000.00" |
| Tax refunds and unused net operating losses (NOLs) | | Unknown, no value listed |
| Causes of Action against third parties (whether or not a lawsuit has been filed) | | Debtor stated "*see significant attachment to follow. *privileged concerns" but no attachment followed. |

---

[15] This is listed twice.
[16] No addendum was attached.