David M. Peters, Esq. (SBN 131788)
Email: dpeters@oraclelawyers.com
**THE ORACLE LAWYERS**
191 Calle Magdalena, Suite 200
Encinitas, CA 92024
Telephone: (760) 415-2333

Attorneys for Debtor/Respondent, David Michael Peters

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.: 23-00105-MM7 |
| DAVID MICHAEL PETERS, | **AMENDED  OPPOSITION TO THE CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND ORDER TO SHOW CAUSE FOR PERMANENT INJUNCTION PROHIBITING SAME** |
| Debtor | |
| | Judge:   Honorable Margaret M. Mann |
| | Dept.:   1 |
| | Room:   218 |
| | Hearing Date: October 5, 2023 |
| | Hearing Time:  10:00 a.m. |

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

1

## <u>DECLARATION OF DAVID MICHAEL PETERS</u>

I, David M. Peters, am the Debtor in this case.

1.      There is very little admissible evidence.  Conversely, the volume of

evidence needed to support the claims, defenses and allegations set forth in this

declaration are extensive.

2.      When an arbitration award is submitted to the State Court to rule upon, the

State Court must adhere to Code of Civil Procedure ("CCP") § 1286:

> If a petition or response under this chapter is duly served and filed, the <u>court</u>
> <u>shall</u> ***confirm the award as made***, whether rendered in this state or another
> state, unless in accordance with this chapter it corrects the award and
> confirms it as corrected, ***vacates the award*** or ***dismisses the proceeding***.

3.      On January 20, 2023, the Court issued a *tentative* ruling to confirm

Creditors' *submitted* <u>Arbitration Award</u> ("*submitted* Award") in the amount of

$15,339,614.41.

4.      On April 10, 2023, this Bankruptcy Court granted Creditors' request for

relief from the automatic stay to enable the State Court to make its final

ruling\order to the *submitted* tentative Arbitration Award.

5.      On April 25, 2023, the State Court did **not** confirm its *tentative* ruling.

The word "***tentative***" is defined as "***not certain or fixed; provisional***."   The State

Court did **not** confirm the *submitted* Award.   Instead, the State Court determined

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST
DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308
FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR
PERMANENT INJUNCTION

2

that the "*submitted* Award" did **<u>not</u>** qualify or meet the statutory requirements for a court to have jurisdiction to confirm, vacate or dismiss the proceedings under CCP § 1286.

## CHRONOLOGICAL OF IMPACT EVENTS AND ACTIONS

6.      Identification and tracking of events and corresponding actions from January 20, 2023 through the present inherently provide explanation for very unusual significant events within a short time window.

[A] On January 19, 2023, the Court issued a *tentative* ruling to confirm Creditors' *submitted* <u>Arbitration Award</u> ("*submitted* Award") in the amount of $15,339,614.41. [B] On January 20, 2023, I filed for bankruptcy protection under Chapter 11. [C]  February 3, 2023, Referee's identified needs for the Referee's requested relief from the Automatic Stay; [D] Creditor's submitted argument to the 9th Circuit to forestall briefing specific to the centerpiece legal status claim by me that the partnership was, at best a "general partnership"; [E] the April 25, 2023 Final Ruling\Minute Order did not confirm the *submitted* Award, and instead concluded that the *submitted* Award was too statutorily deficient to even be considered an arbitration award to be ruled upon by the State Court; [E] Creditors' July 11, 2023 Motion and Declaration to Extend the Involuntary Chapter 7 is one of the more significant matters to be addressed.  [F] Docket 300, the ***Supplemental Declaration*** filed on July 25, 2023, by Leonard E. Ackerman,

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

3

which just missed being part of the review of July 25, 2023, Docket 306.  In

Docket 300, Mr. Ackerman analyzed, addressed and concluded that the Creditor's

December 22, 2022 recorded Writ of Attachment was, post April 25, 2023, an

invalid and improper shielded and protected lien in the amount of $10,657,608.76.

## TOO MANY BLUFF CLAIMED ORDERS AND THE LAW

7.      This segues into communication between the Chapter 7 Trustee and myself,

through the Chapter 7 Trustee's legal counsel who authored almost every

substantive advocacy communication to me.  The most decisive cause and effect

is that Mr. Slater has made far too many demands and ferociously defended

claimed rights for the Chapter 7 Trustee, from which if I did not immediately

agree, the conclusion was that I had violated BK Court orders, statutes and, in two

instances, should be arrested, his literal threat.

8.      The claimed best piece of evidence is of my "defiance" of purported BK

orders, BK law and legitimate orders from the Chapter 7 Trustee.  I will grant you

that if what was written is literally taken and applied at "face value" with nothing

else, it should equate to a conclusion that is a problem for me.

9.       The practice of overreaching demands which state or imply to be the law or

the order of the Court was and remains a "staple" practice by Mr. Slater, arguably

on behalf Mr. Ackerman or the Court.    I have to assume that with the role of an

attorney for Chapter 7 Trustee administering an involuntary BK, that pit bull grab

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST
DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308
FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR
PERMANENT INJUNCTION

4

could be the norm.

10. The annuity claims and seizure occurred months before any approval by the Court, procured as is the case, as a result of late or incomplete filing by me, not as a result of substantive review.

11. The Annuity monies were taken more than month before even informing me. The June 6, 341(a) Creditors meeting was more akin to "performances" than real. Mr. Slater launched into questions intended to ascertain how much of his effort related to the Annuity I had discovered. I defy anyone involved and knowable to this issue to countermand this conclusion. Then Mr. Slater took aim at lack of maintenance of 308 Flores De Oro. It is and was no surprise that one of the positions I took was for him to return taken monies, which caused the claimed lack of maintenance.

12. About 6 weeks later, his request was granted for the annuity, because I filed too late, a constant for too long, a fair amount through no fault, due to the court filing system. That stated, most significant was my lack of acumen to timely respond.

13. The Writ of Attachment, Writ of Execution and Writ of Possession are filed, and then filed again, early and often, also causal time connected with my almost immediately refuting with the constant claim that the 308 Flores De Oro was exempt from 11 USC 542 turnover. After more than thirty (30) attempts, the

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

conclusion provided is effectively, a "definite probably."

14.     Exactly how and through what means, I am not sure, except to state that the facts and actions for the 308 Flores De Oro and 191 Calle Magdalena are wrong and inappropriate.  The fact that I did not help myself be virtue of late filings and a lack of acumen on certain issues cloud my argument to the Court.  That does not change the misfeasance for 308 Flores De Oro.  The Trustee and Trustee's attorney have an obligation to me as well, including following the law with regard to the exemption from 11 USC 542 turnover for my domicile.

15.     The repackaged and sold stubborn defiance to cause problems is not correct.  That leap is big. The best start is Docket 375 and Docket 376, threshold described events, i.e. "Writ of Possession" for 308 Flores De Oro, which were **not** signed.  The true albatross is Docket 385 and especially Docket 386 which, by reading the descriptions, the reference is to 191 Calle Magdalena, for which I was deep into how to defend.

16.     Within the grouping and timeline of what was filed are many problems, the ignition order for both 308 Flores De Oro and 191 Calle Magdalena were obscured, for 191 Calle Magdalena, modified after the fact.   Moreover, the direct object of both was to maintain the element of surprise.  I missed and contend as referenced that it was more likely than not that I would miss. I feel that was the intent.  Docket 385 and Docket 386 were deduced to be the description of what

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

6

had been tapped to the door a day earlier, not seen as I go in through the garage.

17.    The "defiance" pronouncement is correct and appropriate, however, only to and as between myself and Mr. Slater or Mr. Ackerman.  First, the past bluff claims were caught, a practice which reduced. Within hours, it seemed too big to correct.   What was not too big and was and remained an unanswered "deception" was which document was used, how, and when.   There was too much effort to obscure.

18.     I apologize for the result which was not intended to be what is now described, a defiance of the law.   The length of time to ascertain the deception was too long and compounded.

19.    I loathe to acknowledge impact of pressure and actions within a case, feeling acknowledging it will foster more.   I did not fare well without medication and had far more than expected impact from not having the Sleep Apna machine.

20.    As to the four break-ins claimed, these are a trap of overreaching and false accusations.  The only possible claim of break-in was through the doggy door. The **breaking of glass "French door windows"** in the master bedroom, this **statement of fact is not only false but contradicted from Mr. Ackerman's own June 19, 2023 declaration, Page 7(F), Lines 13 & 14**.

21.    The most compelling facts and actions are prior to the May 24, 2023 notification, by virtue of unexplained intrusions and inspections at 308 Flores De

Oro, several of which warranted police reports. I concurrently made several informal and then a formal complaint to the US Trustee. Exigent circumstances caused multiple investigations by third parties "professionals".

22.    My first report was on April 30, 2023; several more on May 1, May 3 and May 6 and May 7, between 3 a.m. and 5:00 a.m.  This tapered down but continued without explanation.  Despite the number of reports and complaints I made, I did not learn about Christie Golemb's official May 3, 2023 visit until I read her June 19, 2023 declaration, included in Docket 220, the "get out" edict Notice of Intended Action.  These results ,whether or not correct, solidified the  very real concern and trepidation.

23.    Suffice it to state, Ms. Golemb's comments regarding issues at the 308 Flores De Oro were delivered in as unprofessional a manner as imaginable.  While I do not attribute these "below the belt" tactics to Ms. Golemb, I was disappointed that an explanation was not forthcoming.  This disappointment has risen to the necessary conclusion that her actions align with the goals of adversaries.

24.    Most disconcerting and impossible to accept involves "what did not occur," unlike the last-minute effort to portray me in a poor light through inference, then conjecture, and then claimed authentication without nexus, set forth in Docket 430, which is ample and has the weight of a judicial officer that overwhelms the

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

8

facts and claims proffered by me.

25.     The evidence and record establishes that very significant intrusions, inspections and related events occurred and within the knowledge base and control of Court Appointed and Court approved quasi representatives.  I was left in the dark, for what I have no doubt is considered necessary to accomplish the stated objectives.  While I vehemently disagree with that conclusion-based approach, the disagreement is appropriately adjudicated by a court or this BK Court.  This is far different and more serious. The intrusions created alarms and a few crossed over any possible appropriate line. Still, this transgression falls within the realm of a Civil Court.

26.     The denials of knowledge or involvement in these events by those granted lofty authority, respect and deference.  Had I been apprised, of course, I would have objected.  Whether my objections amounted to anything is a very typical part of the litigation process.  The intrusions, several of which were extreme and indefensible, legitimately resulted in life safety questions, considerations and altered conduct.  The conclusion is that those in charge of my fate watched a very real and appropriate concern, specific to life safety, presented by me, and ignored it.

27.     I constantly sought information, clarification and confirmation of BK involvement.  Again, if known, I would have taken issue, something attorneys do

OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION

9

every day. I even made the point that the lack of confirmation of BK involvement heightened the " threat to life and safety."  Through investigation and other, even worse because BK sanctioned involvement *was* employed, a couple of instances could not possible have been directly sanctioned by the BK Court, leaving one of two outstanding issues: (a) first, to the BK Court, please check and advise if one or more of the "vendors" intentionally" or by error went too far, and (b) if a solid response was not forthcoming under (a), I had a focused date-stamped and time-stamped matter to have investigated.

28.    I do not believe that justification exists from causing and then withholding confirmation which would remove a very real and justified direct threat to life and safety which existed from the beginning of May 2023 through and until I received Docket 200 on June 21, 2023, which included the June 19, 2023 declaration from Ms. Golemb, including her meeting at my domicile and admitting to attempting to enter my domicile on May 3, 2023.

29.    I am positioned to reverse so much of the heavy weighing bad faith label.  I have would like the chance.

**Dated**: October 5, 2023                              **THE ORACLE LAWYERS**


                                                         By:    */s/David M. Peters*
                                                         David M. Peters, Esq.
                                                         Attorneys for David M. Peters

**OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST DEBTOR AND HIS AGENTS FOR STAY-AWAY ORDERS FROM REAL PROPERTY LOCATED AT 308 FLORES DE ORO, RANCHO SANTA FE, CA AND SOUTH POINTE FARMS DEVELOPMENT AND OSC FOR PERMANENT INJUNCTION**

10